

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| *Martha Griffin, et al.,* | * | |
| *Plaintiffs,* | * | |
| v. | * | Civil Action No.: 76 – 0229 |
| | * | (J. Waddy) |
| *National Public Radio, Inc.* | * | |
| *Defendant.* | * | |

### DEFENDANT NATIONAL PUBLIC RADIO'S MOTION TO TERMINATE AND/OR VACATE THE MARCH 28, 1978 CONSENT DECREE

Defendant National Public Radio, Inc. ("NPR" or "Defendant"), by and through its undersigned counsel and pursuant to F.R.C.P. 60 (b) (5), files this Motion to Terminate and/or Vacate the March 28, 1978 Order approving the Settlement Agreement and General Release (the "1978 Consent Decree"). NPR has eliminated the alleged violations of law that formed the basis for this lawsuit and has operated in good faith and substantial compliance with the terms of the 1978 Consent Decree for a significant period of time. NPR has established policies and procedures to comply with the requirements of the 1978 Consent Decree and created institutional mechanisms to ensure continued compliance. Thus, the Court should issue a declaration that NPR has complied with the 1978 Consent Decree, vacate the 1978 Consent Decree and terminate this action.

NPR files this Motion because it does not appear from the record of the case that prior to the filing of this Motion any party or the Court have taken specific action to address NPR's achievement of the requirements of the 1978 Consent Decree. NPR files this Motion to clarify



and complete the record so that the Court is provided with evidence that the relief requested is appropriate and should be granted to NPR.

### I. Procedural History of the Litigation

The instant action was filed on February 5, 1976 by Martha Griffin, William Green, James Harmon and the National Black Media Coalition ("NBMC"). The Complaint was brought for a declaratory judgment as to plaintiffs' rights and for a permanent injunction, restraining NPR from maintaining a policy, practice or custom of discriminating against Plaintiffs or their class because of race or color in violation of 42 U.S.C. § 1981. Specifically, the Complaint alleged that NPR had no validated criterion devices for hiring or promoting employees.

Defendant moved to sever the claims of the Plaintiffs. On September 17, 1976, the Court determined that the claims of NBMC were properly severed because there was no logical relationship between the claims of the individual plaintiffs and those of NBMC. However, the Court permitted the case to move forward as a class action finding that Plaintiffs had alleged common questions of law and fact. Ultimately, NBMC and Mr. Harmon were dismissed from the case, and a new Plaintiff, Lloyd Morrison, was added as a class representative.

On April 1, 1977, the Court formally certified the class as "[a]ll present and former black employees of NPR who, because of their race, have been adversely affected by defendant's unlawful employment practices, and all black persons who have been or may be denied employment by Defendant, NPR, because of their race."

On January 27, 1978, the parties reached a settlement agreement and dismissed the Complaint with prejudice as to the named Plaintiffs, and without prejudice as to the unnamed class members. As part of the agreement, the parties entered into a consent decree which required that NPR incorporates the following into its Manual of Policies and Procedures: (1) the affirmative action plan adopted by NPR in 1975; (2) the posting period for notices of job

vacancies will be extended from 10 to 15 working days; (3) job vacancies will continue to be announced publicly, through advertisements, talent banks, etc., at the same time as they are announced internally; (4) no preference will be accorded an individual merely because he or she already works for NPR or a member station; and (5) only education or prior experience requirements that are essential to the position to be filled will be utilized. NPR also agreed that its personnel manager would review each position with the hiring officer for that position to determine the minimum education and/or experience absolutely essential to satisfactory performance of the job.[1] The Settlement Agreement and General Release and Order approving the Settlement Agreement are attached as Exhibit 1.

On January 30, 1978, an Amended Motion to Dismiss and Approve Settlement was filed with the Court. The amended document included a provision requiring NPR to conspicuously post notice of the settlement for 30 days so that unidentified class members would be made aware of the settlement. Unidentified class members were given until March 20, 1978 to file objections to the settlement. On March 24, 1978, counsel for NPR filed an Affidavit verifying that the notice had been posted for the requisite 30 day period. The final action in the case occurred on March 28, 1978 when the Court entered an Order approving the settlement agreement and dismissing the case. Refer to Exhibit 1.

There are no provisions in the 1978 Consent Decree that detail how the Court would monitor and/or supervise NPR's achievement of the requirements set forth therein or a provision for the termination of application of those requirements at a future specified date. In fact, no

---

[1] The parties further agreed that Martha Griffin and William Green would be provided with a letter of reference, that Lloyd Morrison, upon supplying NPR with a current resume and other required application materials would be considered for further openings in reporting and/or production positions until he indicates that he is not interested in being considered, and that Plaintiffs would receive a total sum of $10,000. These specific terms were met almost immediately after the agreement was signed.

further action has been taken by the parties or this Court since 1978. However, because NPR is uncertain of whether the requirements of the 1978 Consent Decree continue to apply to its personnel operations, due to this uncertainty, NPR seeks review by this Court. The record is silent as to whether NPR has substantially complied with the terms of the 1978 Consent Decree, although more than sufficient time has passed in order for such determination to have been made. NPR is desirous of having the record of this case clarified to include a declaration from the Court that it has met the requirements established by the 1978 Consent Decree. As a matter of equity, the Court should provide such relief.

## II.    Standard for Relief from the 1978 Consent Decree in the Employment Context

Modification or termination of an order/consent decree is permitted under Federal Rule of Civil Procedure 60(b), which provides in pertinent part:

> On motion and upon such terms that are just, the court may relieve a party or a party's legal representative from final judgment, order, or proceeding for the following reasons: . . . (5) it is no longer equitable the judgment should have prospective application; and (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b)(5); *NLRB v. Harris Teeter Supermarkets*, 342 U.S. App. D.C. 32 (2000).

### A.    Purpose of Consent Decrees

In the case of *Cobell v. Norton,* 283 F. Supp. 2d 66 (D.D.C. 2003), the Court undertook a copious review of the purpose of consent decrees that require "institutional reform." The Court noted that:

> ...this type of litigation is typically known as "institutional reform litigation" because it is initiated in order to reform a government institution by bringing it into compliance with the Constitution or other governing law. The two defining characteristics of an institutional reform case are (1) the case is founded upon a claim that the statutory or constitutional rights of a class of plaintiffs have been violated by an ongoing governmental practice, and (2) the class of plaintiffs seeks to have the trial court assume a continuing role in monitoring and enforcing structural change within the governmental entity.

*Id.,* 283 F. Supp. 2d at 88.

The Court further noted that when a court ratifies a negotiated agreement submitted by the parties, the agreement is known as a "consent decree", and upon demonstration that the defendant has remedied the situation that gave rise to the suit, the court will typically terminate its retention of jurisdiction over the case. *Id.,* 283 F. Supp. 2d 89 – 92.

As indicated in *Cobell,* institutional reform litigation began with school desegregation cases and expanded into settings such as prisons, mental health facilities and public housing. Litigation strategy in the private sector has also included the development of consent decrees in response to lawsuits alleging discriminatory employment practices, which is the situation in the instant case. The Plaintiffs in this action alleged that NPR, as an institution, engaged in discriminatory hiring practices and sought relief. NPR's response was to enter into the 1978 Consent Decree, with the anticipation that its achievement of the requirements of the Decree would result in a declaration from the Court that NPR had met those requirements and termination of jurisdiction of the Court over this action.

There is a dearth of case law regarding when a defendant may appropriately seek relief from consent decrees approved in cases involving employment issues in the private sector. However, the institutional reform litigation ensuing in the public sector has resulted in the development of a body of case law that provides courts with guidance regarding the dissolution of consent decrees in the employment context in the private sector. NPR suggests that the standards established by these cases should be applied herein to determine whether NPR has "remedied the situation that gave rise to the suit." *Id.*

**B.    Establishing Compliance with a Consent Decree**

In seeking dissolution of a consent decree, a defendant is requesting that a court

demonstrate confidence in the defendant for having achieved success in complying with the terms of the decree and to restore to the defendant the control of its business. There is no question that the burden of proof falls on the party seeking an end to court supervision. *Freeman v. Pitts*, 503 U.S. 467, 494 (1992).

In undertaking the inquiry as to whether or not its supervision should be terminated, a court must ask "whether the [defendant] has complied in good faith with the ... decree since it was entered, and whether the vestiges of past discrimination have been eliminated to the extent practicable...Implicit in the Supreme Court's use of the term "practicable" is "a reasonable limit on the duration of...federal supervision." *Belk v. Charlotte Mecklenburg Board of Education*, 269 F. 3d 305, 318 (4th Cir. 2001), quoting from *Board of Education v. Dowell*, 498 U.S. 237, 247-50 (1991) and *Coalition to Save our Children v. State Board of Education*, 90 F. 3d 752, 760 (3rd Cir. 1996). In other words, consent decrees are not intended to operate in perpetuity. *Manning v. School Board of Hillsborough County*, 244 F. 3d 927, 942 n.25 (11th Cir. 2001).

"The obligations required of each party to a consent decree must be found within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." *NAACP, Jacksonville Branch v. Duval County School Board*, 279 F.3d 960, 966 (11th Cir. 2001), quoting from *Jacksonville Branch, NAACP v. Duval County School Board*, 978 F.2d 1574, 1578 (11th Cir. 1992). A court should look to a defendant's history of good faith in both the operation of its business and the implementation of a consent decree and determine whether every reasonable effort has been made to eliminate vestiges of discrimination. A defendant is not required to eliminate the vestiges of discrimination "to the maximum extent practicable", rather a defendant must remedy the deficiencies attributable to the prior discrimination *to the extent*

*practicable. NAACP, Jacksonville Branch,* 279 F.3d 960, 973-74, quoting from *Missouri v. Jenkins,* 515 U.S. 70, 101 (1995) (emphasis added).

### 1. Good Faith Compliance in Employment Cases

As noted above, substantial compliance with a consent decree, coupled with a good faith effort to remedy the effects of illegal discrimination can operate to render the decree unnecessary. The court is required to make a judicial inquiry as to whether there is an evidentiary or legal basis for termination of a decree, including whether the employer has complied in good faith with the decree and whether the vestiges of past discrimination have been eliminated to the extent practicable. *United States v. Sanitation Employees Association, Inc.,* 2 F.3d 1497 (11th Cir. 1993). Where manifest racial imbalances have been eliminated and fair employment practices have been instituted, affirmative action consent decrees should be terminated. *Martinez v. City of St. Louis,* 327 F. Supp. 2d 1002 (D. Mo. 2003); *Board of Midwest Guardians, Inc. v. City of Omaha,* 9 F. 3d 677, 680 (8th Cir. 1993).

### B. Changes in Law/Changes in Circumstances

In addition to examining the performance of a defendant in implementing the requirements of a consent decree, a court may also consider other factors to determine whether continued jurisdiction is necessary. Even if a defendant may not have met the standard articulated above, it there are changes in law or circumstances that affect the necessity of imposing consent decree requirements upon a defendant, this could require a court to dissolve the decree.

In *Rufo v. Inmates of the Suffolk County Jail,* the Supreme Court recognized that the dramatic increase in institutional reform litigation[2] in recent years demanded a "more flexible"

---

[2] *Rufo* involved "unconstitutional conditions at a county jail," but has been applied to discrimination cases, as such are also considered institutional reform litigation.

approach to consent decree modifications. 502 U.S. 367, 380 (1992). Flexibility is required because "such decrees often remain in place for extended periods of time [and] the likelihood of significant changes occurring during the life of the decree is increased." *Id*. The Supreme Court further recognized that "the experience of District Courts of Appeals in implementing and modifying such decrees has demonstrated that a flexible approach is often essential in achieving the goals of reform litigation." *Id*. at 381.

Under the standard articulated in *Rufo*, "a party seeking modification of a consent decree may meet its initial burden by showing either a significant change in factual conditions or in law." *Id*. at 384; *Agostini v. Felton*, 521 U.S. 203 (1997). A change in facts will warrant modification of a consent decree where the changed conditions make compliance "substantially more onerous." *Rufo*, 502 U.S. at 384. Although "modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into the decree" the Supreme Court rejected the position that a "modification should be allowed only when a change in facts is "'both unforeseen and unforeseeable.'" *Id*. The Court observed that "litigants are not required to anticipate every exigency that could conceivably arise during the life of a consent decree." *Id*.

A change in law will warrant modification of a consent decree where the new statutory or decisional law alters one of the legal obligations upon which the parties' agreement was based. In addition, where a statute or decision clarifies the applicable law, a party may obtain a modification of a decree by showing that the parties' agreement was based upon a misunderstanding of the governing law. *Id*. at 391.

Once a court has determined that modification of a consent decree is appropriate due to a change in facts or law, the Court should then consider whether the proposed modification is suitably tailored to resolve the problems created by the changed circumstances. *Id.*

### III.   NPR Took Prompt Action to Implement the Requirements of the 1978 Consent Decree and Continues to Comply with the Requirements

#### A.   NPR's Actions from 1978 – 1996

Upon entry of the consent decree in March 1978, NPR immediately took steps to ensure its compliance with each of the decree's terms. As a threshold matter, NPR has substantially complied with the requirements of the 1978 Consent Decree. NPR has achieved the following:

1.   NPR has had an affirmative action plan (AAP) in effect since 1975 and continues to regularly review and update its AAP. Since 1997, it has done so annually. Affidavit of DeNise Johnson, at ¶11, Exhibit 2. Also attached are relevant excerpts from the AAPs for 2005, Exhibit 3;

2.   NPR has clearly articulated and published a Recruitment and Hiring Policy. Refer to Exhibit 4. With limited exception, all job vacancies have been and continue to be posted for the fifteen day period required by the decree. Id. at p.11, Exhibit 4. In fact, the posting period is often extended for a greater period of time than that required by the decree.[3] Id.;

3.   Since 1978, NPR has ensured that the talent banks receive notice of each vacancy and a copy of the posting on the same day that the position is announced internally. These talent banks specifically include various minority organizations such as the National Association for

---

[3] Certain positions within a job family or "unit" may not be posted externally. Affidavit of DeNise Johnson, at ¶10, Exhibit 2. This was done to allow some non-managerial internal promotions. Id. For example, if the individual held a lower level position on a given show, such as Morning Edition, he or she was eligible for an internal promotion to a higher level position on the same show. The vacated lower level position was then posted externally. Id. These internal promotions occur primarily on the "news" side of NPR and account for approximately 25 vacancies per year. Affidavit of Cheryl Hampton, at ¶¶4-8, Exhibit 12.

Women, in an effort to recruit minority journalists.[4]  Id.  In more recent years, NPR has begun creating a weekly publication titled "Employment Opportunities" which is available in hard copy at NPR and is also sent to all of the talent banks included on NPR's list.  Id.;

    4.    NPR has taken the necessary steps to ensure that NPR does not grant any special preference to current employees.  In connection with this, NPR created detailed hiring paperwork which requires each supervisor to provide detailed justification for their hiring decisions.  Id.; *see also* Justification Form, Exhibit 6.  The justification form is still currently utilized and requires managers to identify how the individual selected for the position objectively meets the requirements and why the individual is more qualified than each of the other candidates who were interviewed for the position.[5]  Affidavit of DeNise Johnson, at ¶¶15-16, Exhibit 2.  The hiring justification form is reviewed and signed off by the Hiring Manager, the Vice President of the area/division where the vacancy is located, the Vice President of Human Resources, and the Executive Vice President for NPR.  Affidavit of Kathleen Jackson, at ¶3, Exhibit 8.  This provides a check and balance system to objectively assess that the best qualified candidates are hired; and,

    5)    Managers are required to obtain approval for each new position created and to update the position description.  Affidavit of DeNise Johnson, at ¶17, Exhibit 2.

---

[4] The list of talent banks has changed over the years and currently includes the Department of Employee Services' electronic job board, Career Builders, and Craig's List.  Affidavit of DeNise Johnson, at ¶13, Exhibit 2.

[5] In addition, whenever an employee's position is reclassified to a higher or lower level or an employee is determined eligible for a pay increase, the managers must also complete a justification form for the reclassification or pay increase.  Affidavit of DeNise Johnson, at ¶¶15-16, Exhibit 2.

NPR has implemented other actions not specifically required by the 1978 Consent Decree to ensure continued compliance. NPR created the position of "Staffing Associate". Position description attached as Ex. 7.

Staffing Associates are responsible for drafting and reviewing position postings. Whenever a new position is created, a Staffing Associate is required to meet with the hiring manager to identify the essential requirements for the position. Affidavit of DeNise Johnson at ¶¶19-21, Exhibit 2. If a position does not require special licensing or an educational degree, such as a juris doctor or CPA, NPR uses the term "education or equivalent experience" in special recognition that education may not be essential to the position. Id. If the vacant position has existed for a substantial period of time, the Staffing Associates seek input from the manager to determine if any of the essential requirements need to be changed each time the position is posted. Id. The Staffing Associate is then responsible for tracking the hiring process, from posting the vacancy, through the interview process, and ensuring that new hire paperwork is properly completed. Id.

In addition, beginning in the early 1980s, NPR hired a Special Assistant for Affirmative Action to ensure that NPR remains focused on maintaining a diverse workforce. This position is currently titled "Director, Diversity Management." The Director reports to the President of NPR and has responsibility for diversity strategy and training, which includes but is not limited to, working with Programming and Human Resources on outreach and recruitment efforts. Affidavit of Walterene Swanston, attached as Exhibit 11.

NPR is also dedicated to maintaining on-going relationships with national minority media associations in an effort to identify minority candidates and to ensure a diverse pool of applicants. NPR conducts an internship program geared towards training women and minority

applicants in radio broadcasting. NPR also has a program titled The Next Generation Radio Project, which is specifically aimed at having NPR representatives make presentations at conferences held by minority radio groups, seek out new talent and conduct workshops to pique the interest of minority journalists. Id. Such conferences are conducted by the National Association of Black Journalists, the National Association of Hispanic Journalists, the Asian Journalists Association, the Native American Journalists Association, and the National Lesbian and Gay Journalists Association. Affidavit of Kathleen Jackson, at ¶4, Exhibit 8.

In an effort to ensure that management level employees are trained in appropriate hiring practices, each supervisor is specifically trained on hiring and interviewing techniques as part of their supervisor orientation program. Affidavit of DeNise Johnson, at ¶¶25-26, Exhibit 2. NPR also has a training department responsible for training personnel on topics such as anti-discrimination laws, hiring, promotions, terminations, reorganizations, etc. Id.

### B.  NPR's Actions from 1996 – Present

In recent years, NPR has continued to comply with the requirements of the 1978 Consent Decree as described above. Affidavit of DeNise Johnson, at ¶8, Exhibit 2. In addition, NPR has formalized its process for approval of each new Affirmative Action Plan. Affidavit of Kathleen Jackson, at ¶¶5-7, Exhibit 8. NPR's Board of Directors has established a Finance and Administration Committee which reviews the proposed plan for each year during the Fall Board meeting. Id. This Committee also receives quarterly reports from the human resources department regarding the status of compliance with the goals of the Plan. Id. The quarterly reporting allows NPR to timely self-monitor its progress in achieving the articulated goals and take corrective actions when necessary.

In 2000, NPR developed a diversity plan that is a multi-year plan. NPR's Board of Directors is also provided with reports on staff diversity on a regular basis. Affidavit of

Kathleen Jackson, at ¶¶8-9, Exhibit 8. The diversity plan is not required by the 1978 Consent Decree. Despite this fact, NPR chose to implement the diversity plan process as another monitoring tool for NPR to track its progress in recruiting women and minorities. Id.

Moreover, NPR has established several ways for an employee to file a complaint regarding any hiring or promotion decision she believes violates NPR's policies or some other regulation or law. First, the employee can file a complaint with her immediate supervisor. If the employee is not comfortable with her immediate supervisor, she can follow the chain of command and complain to a higher level employee. Second, a complaint may be filed formally with the Manager of Employee Relations or the Director of Employee Relations and Staffing. Third, the employee can file a union grievance as the collective bargaining agreements contain anti-discrimination provisions and provisions for arbitration of such disputes. Finally, NPR's legal department is also available to receive complaints from employees or applicants. *See,* NPR's Internal Dispute Resolution Procedure attached as Exhibit 9.

### IV.    Changes in Law and Circumstances Since 1978 Also Support NPR's Request to Vacate the 1978 Consent Decree

#### A.    Enactment of the D.C. Human Rights Act

At the time this action was filed, the District of Columbia did not have a well developed anti-discrimination law. In 1973, the Mayor of the District of Columbia enacted a regulation that prohibited discrimination in the District of Columbia for any reason. Plaintiffs filed this action in September 1976. The City Council adopted anti-discrimination legislation and the Mayor signed the legislation on September 28, 1977. *D.C. Statute §2-1402.01.* The parties reached a settlement agreement in January 1978, which the Court approved in March 1978. As such, at the time the parties to this action agreed to the terms of the 1978 Consent Decree, there had been

limited access to the local courts by employees to address alleged discriminatory employment practices.

The legislation, now referred to as the D.C. Human Rights Act, affords employees with the right to pursue a private cause of action for discrimination in employment against employers operating businesses in D.C. An employee may also engage in the extensive administrative process before the D.C. Office of Human Rights to have such complaints addressed. *D.C. Statute §2-1403.16.*

Since 1978, individuals have availed themselves of the opportunity to obtain relief pursuant to the D.C. Human Rights Act (the "DCHRA"). The local court has a well developed body of case law interpreting the rights of employees and responsibilities of employers under the DCHRA. The D.C. Courts "...have recognized that the DCHRA "is a remedial civil rights statute that must be generously construed". *Lively v. Flexible Packaging Association, et al.,* 830 A.2d 874, 887 (D.C. 2003).

Of course, it must be noted that individuals may also pursue their claims regarding discriminatory employment practices pursuant to Title VII, 42 U.S.C. §2000e, et seq. or 42 U.S.C. §1981, as the Plaintiffs did in this action. However, the significant difference today is that a plaintiff has the right to a jury trial and damages, due to the 1991 amendments to both of these laws.

Given this development of anti-discrimination laws, there is more than an adequate remedy at law for individuals to pursue relief from alleged discrimination in employment, which constitutes a legitimate basis for this Court to relinquish jurisdiction over this action and vacate the Consent Decree.

### B. NPR's Implementation of Collective Bargaining Agreement Grievance/Complaint Procedures

NPR is a party to a collective bargaining agreement (the "CBA") with The American Federation of Television and Radio Artists Washington-Baltimore Local (AFTRA), which represents all on-air and production staff. The current CBA was ratified for the period of October 1, 2003 – March 31, 2006. The CBA includes a nondiscrimination article. Article 2 - Nondiscrimination provides in part:

> A. **Equal Opportunity.** National Public Radio is an equal opportunity employer. The Company and AFTRA agree not to discriminate on the basis of race, color religion, national origin, sex, age, sexual orientation, disability, or any other basis protected by law.
>
> B. **Third Party Dispute Resolution.** This section addresses "claims" (not grievances), which are defined as any dispute between a unit employee and NPR (including its officers, directors, employees and agents acting in the scope of their duties) arising under any state or federal statute or common law ("Claim").
>
>> 1. No unit employee will file any suit against NPR arising from any Claim until the Claim has been submitted to fact-finding as hereafter set forth, provided that nothing herein deprives any unit employee who is dissatisfied with the recommendation of the fact-finder of any right to pursue judicial action against NPR with respect to the Claim.

This section goes on to require that a disputed claim under this Article will be resolved by a proceeding administered by the American Arbitration Association and the process is further explained. See Article 2 of the CBA attached as Exhibit 10.

This particular provision provides a majority of NPR employees with the option of resolving a dispute regarding discrimination via arbitration proceedings but does not preclude an employee from also seeking redress through judicial action. This access for employees to utilize arbitration proceedings to resolve discrimination complaints provides a change in circumstances that allows the Court to determine that these employees have several alternatives not previously available to them in 1978 to address the alleged hiring and promotion problems which they

complained about at that time, thereby eradicating the need for the Court to continue enforce the Consent Decree.

### C. NPR's Enactment of Policies

As noted herein, NPR has clearly articulated policies that address recruitment and hiring practices. Refer to Exhibit 4. NPR also has published an Equal Employment Policy and has provided all of its employees with several processes to address any concerns they might have with employment practices. NPR policies attached as Exhibit 5.

### V. Conclusion

It is no longer equitable for NPR to be required to implement the terms of the 1978 Consent Decree for the following reasons:

1. NPR has substantially complied with the provisions of the 1978 Consent Decree for a sustained period of time;

2. NPR has created institutional mechanisms to remedy the situation that gave rise to this lawsuit, including standard practices for creating and updating position descriptions, posting vacant positions and justifying hiring decisions, an annual AAP review and a process to review staff diversity;

3. NPR has provided its employees with several different procedures to follow to address any concerns they may have regarding hiring and promotion practices; and,

4. The development of the D.C. Human Rights Act and the 1991 amendments to Title VII and 42 U.S.C. §1981 afford employees with remedies that were not available to them at the time this action was originally filed, constituting changes in law and circumstances.

Because of NPR's history since 1978 of good faith in the administration of its hiring and promotion practices, its implementation of the 1978 Consent Decree for a sustained period of time and its demonstrated commitment to continuously review its hiring and promotion

practices and diversity efforts, the 1978 Consent Decree should be vacated and NPR should be allowed to operate its business without the strictures of the Decree forthwith.

                                                Respectfully submitted,

                                                SEYFARTH SHAW LLP

                                                */s/ Abbey G. Hairston*
                                                Abbey G. Hairston
                                                Christina S. Pignatelli
                                                815 Connecticut Avenue, NW
                                                Suite 500
                                                Washington, D.C. 20006-400
                                                (202) 463 – 2400

February 13, 2006                        Counsel for Defendant National Public Radio, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Defendant National Public Radio's Motion to Terminate and/or Vacate the March 28, 1978 Consent Decree, along with exhibits, were hand-delivered on this 13th day of February 2006, to the following:

>David Cashdan
>Cashdan & Kane
>1150 Connecticut Avenue, NW
>Suite 900
>Washington, D.C. 20036
>
>Counsel for Plaintiffs

*Abbey G. Hairston*
Abbey G. Hairston